# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| CORENA T. MINOR, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 4:20-cv-00113-AGF |
| | ) |
| ANDREW SAUL, Commissioner of | ) |
| Social Security Administration, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This action is before this Court for judicial review of the final decision of the Commissioner of Social Security, finding that Plaintiff Corena T. Minor was partially disabled, and therefore partially entitled to disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, or supplemental security income ("SSI") under Title XVI of the Act, 42 U.S.C. §§ 1381-1383f. For the reasons set forth below, the decision of the Commissioner will be reversed and the case remanded for further proceedings.

## BACKGROUND

The Court adopts the statement of facts set forth in Plaintiff's Statement of Uncontroverted Facts (ECF No. 13-1), which the Commissioner does not dispute. (ECF No. 28-1). The Commissioner submits his own Statement of Uncontroverted Facts, (ECF No. 28-1), which Plaintiff disputes. (ECF No. 19-1). Plaintiff's statement provides a fair description of the record before the Court. Specific facts will be discussed as needed to

address the parties' arguments.

Corena Teneke Minor, born August 10, 1977, filed an application for Social Security Disability on July 28, 2016. On January 18, 2017, her application was denied. Tr. 248. Plaintiff appealed on February 3, 2017. Tr. 256. A hearing was held before an Administrative Law Judge ("ALJ") on July 19, 2018. Tr. 168. Plaintiff testified at the hearing, represented by counsel. *Id*. Karen C. Terrill, a vocational expert ("VE"), also testified at the hearing. *Id*. On January 10, 2019, the ALJ issued a partially favorable decision, concluding Plaintiff was not disabled prior to May 1, 2018, but became disabled on that date and has continued to be disabled. Tr. 28, 29. Plaintiff appealed, and the Appeals Council denied review. Tr. 1. Plaintiff has exhausted her administrative remedies and filed this action.

Plaintiff alleged a disability onset date of June 10, 2016 because of the following severe impairments: coronary artery disease; history of myocardial infarctions with stent placements; tobacco use disorder; anxiety; depression; and loss of visual field in both eyes. Tr. 20.

**Plaintiff's Consultative Examination After the Hearing**

During the hearing, the ALJ and Plaintiff's counsel discussed the need for additional information from an ophthalmology consultative examiner. Tr. 198. The ALJ stated "we talked about the fact that [consultative examinations] aren't particularly helpful in translating the limitations or the conditions that are identified therein to work-related functionality. And so we worked through some questions that I will attempt to pose to the ophthalmology CE. Hopefully, if those questions are answered, we'll be

closer to identifying the vision limitations." Tr. 198-199.  The ALJ stated at the end of the hearing that he will "order an ophthalmology CE post hearing for Ms. Minor. . .what I'm going to ask the CE to return in the medical source statement" is a series of questions about what activities Plaintiff would be able to engage in with her near or far acuity.  Tr. 210.

After the hearing, in August 2018, ophthalmologist Dr. Ramula Samudrala performed his second ophthalmology consultative examination on Plaintiff.  Dr. Samudrala initially performed an ophthalmology consultative examination on Plaintiff on January 12, 2017.  Dr. Samudrala testified after the August 2018 consultative examination that Plaintiff was blind in her right eye and had only a "small island of vision" in her left eye.  Dr. Samudrala did not answer a number of questions the ALJ posed to him.  Dr. Samudrala completed a portion of a checkbox questionnaire the ALJ submitted to him, indicating that Plaintiff would not be able to avoid ordinary hazards in the workplace, read small print or book print, or view a computer screen, but Plaintiff can identify the shape and color of a small object.

The following questions were submitted to Dr. Samudrala by the ALJ but not answered:

> 1. With regard to near acuity, defined as clarity at 20 inches or less, the individual would be able to engage in activities requiring near acuity: never, frequently, occasionally, or has no limitation.
> 2. With regard to far acuity, defined as clarity at 20 feet or more, the individual would be able to engage in activities requiring far acuity: never, frequently, occasionally, or has no limitation.
> 3. With regard to depth perception/3-dimensional vision, the individual would be able to engage in activities requiring depth perception: never, frequently, occasionally or has no limitation.

3

4. Would the individual's vision condition result in an inability to avoid work place hazards: directly in front of worker, peripheral to worker.
5. Would the individual's vision limitations impact her ability to engage in handing, fingering, or reaching? Would the individual be able to engage in each of those activities: never, frequently, occasionally, or has no limitation.

The ALJ sent Dr. Samudrala's report to Plaintiff's counsel, telling counsel he "may submit written questions to be sent to the author(s) of the new evidence." Tr. 459. Counsel responded that he would like Dr. Samudrala to answer the questions he skipped. The ALJ sent a memorandum, outlining the specific questions Dr. Samudrala was asked to answer. Counsel then offered to contact Dr. Samudrala to see if he would answer the questions. The ALJ never responded to counsel and Dr. Samudrala never answered the questions.

**The ALJ's Decision**

The ALJ found that prior to May 1, 2018, Plaintiff had the residual functional capacity ("RFC") for:

> light work…except …occasionally climb ramps and stairs but never climb ladders, ropes, or scaffolds. The claimant can perform no work at unprotected heights, around moving mechanical parts or other such hazards. The claimant is limited to performing simple routine tasks but not in a fast paced environment such as an assembly line. The claimant is also limited to work that requires only occasional changes in the work setting with occasional interaction with coworkers and the public. The claimant can also perform no work for which peripheral vision is an essential function.

Tr. 21-22.

Based on this RFC, and considering Plaintiff's age, education, and work experience, the ALJ determined that since June 10, 2016, Plaintiff had been unable to engage in her past relevant work as a home health aide, but could perform the work of housekeeping

4

cleaner, shipping weighter, and routing clerk, light unskilled jobs in the national economy.  Tr. 27-28.  On May 1, 2018, the ALJ found Plaintiff's RFC changed.  Beginning May 1, 2018, the RFC no longer included the exclusion for peripheral vision and instead stated Plaintiff "is unable to engage in work for which near acuity or far acuity is an essential function."  Tr. 26.  The remainder of the RFC was unchanged.  Beginning May 1, 2018, the ALJ found that no jobs exist in significant numbers in the national economy that Plaintiff can perform.  Tr. 29.

  In determining Plaintiff's RFC prior to May 1, 2018, the ALJ considered the following.  On July 5, 2015, diagnostic imaging of Plaintiff's eyes showed decreased attenuation in the bilateral occipital lobes.  On August 22, 2015, an examination of Plaintiff's eyes showed normal pupils.  On February 28, 2016, Plaintiff saw family doctor Robert B. Smith and complained of blurry vision to the nurse.  A physical examination of Plaintiff's eyes on July 4, 2016 revealed "normal eyes."  On November 10, 2016, Plaintiff complained of blurry vision during a visit with gynecologist Yasuo Ishida.  At the same visit, Plaintiff stated she does no housework, laundry, or cooking.  Dr. Ishida examined Plaintiff's eyes and found that they were normal.  On January 24, 2017, Plaintiff's eyes were examined and her pupils appeared normal.

  On January 12, 2017, Plaintiff saw Dr. Samudrala.  This was her first visit with an ophthalmologist.  Dr. Samudrala found Plaintiff had visual acuity of 20/70, her near vision is correctable to 20/50, and she showed cataracts in both eyes.  The ALJ gave the opinion of Dr. Samudrala great weight.  Plaintiff testified at the hearing on July 19, 2018 that "her vision is not good and that she cannot see anything coming from the side.  She

5

asserted that because of this she bumps into doors all the time." Tr. 22.  The ALJ found that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not fully supported prior to May 1, 2018." Tr. 25

In determining Plaintiff's RFC after and including May 1, 2018, the ALJ considered the following.  One of Plaintiff's treating physicians, family medicine specialist Shakthi Bhaskar, M.D., opined that Plaintiff "had bilateral strokes in the past, which cause her to have blurred vision."  Tr. 942.  Dr. Bhaskar has been treating Plaintiff since 2017 and opined that Plaintiff's health problems, including several heart attacks and strokes as well as severe back and leg pain would limit her ability to work.  The ALJ gave this opinion partial weight because "it is partially consistent with and supported by the medical evidence of record…however, this opinion is not a function-by-function assessment as [sic] therefore is not entirely helpful." Tr. 27.

Plaintiff saw ophthalmologist Joseph Steska, a treating physician, on May 4, 2018. His opinion in its entirety reads: "Ms. Corena Minor, 8/10/1977, has severely constricted visual fields of both eyes and visual limitations which will not improve with treatment." The ALJ gave his opinion little weight because it gave no function-by-function assessment of the Plaintiff's ability to perform basic work functions.  The ALJ found the opinion to be "less than helpful in determining the [Plaintiff]'s residual functional capacity." Tr. 26.

6

The ALJ noted that "around this time [Plaintiff] had an ophthalmological examination with Ramulu Samudrala, M.D., who opined the claimant had markedly decreased vision in her left eye and is blind in her right eye." Tr. 27. This examination was the consultative examination the ALJ ordered after the hearing, and Plaintiff's second visit with Dr. Samudrala. Dr. Samudrala found Plaintiff had visual acuity of 20/50 and near vision correctable to 20/100 at the second visit. The ALJ gave this opinion significant weight because it is supported by the medical evidence in the record. The ALJ found Plaintiff's "noted visual acuity of 20/50 and near visual acuity of 20/100 supports the limitations opined by Dr. Samudrala. The claimant's earlier 20/70 visual acuity and 20/50 near visual acuity supports the limitations opined by Dr. Samudrala." Tr. 27.

Plaintiff raises two arguments. First, she argues the decision is not sufficiently based on the record because the ALJ fails to explain why the onset date of her disability is May 1, 2018. Second, she contends that the ALJ failed to fully and fairly develop the record because the ALJ failed to follow up with Dr. Samudrala or allow Plaintiff's counsel to follow up with Dr. Samudrala.

## DISCUSSION

**Standard of Review and Statutory Framework**

In reviewing the denial of Social Security disability benefits, a court must review the entire administrative record to determine whether the ALJ's findings are supported by substantial evidence on the record as a whole. *Johnson v. Astrue*, 628 F.3d 991, 992 (8th Cir. 2011). The court "may not reverse merely because substantial evidence would

7

support a contrary outcome.  Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion." *Id*. (citations omitted).  A reviewing court "must consider evidence that both supports and detracts from the ALJ's decision.  If, after review, [the court finds] it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the decision of the Commissioner." *Chaney v. Colvin*, 812 F.3d 672, 676 (8th Cir. 2016) (citations omitted).  Put another way, a court should "disturb the ALJ's decision only if it falls outside the available zone of choice." *Papesh v. Colvin*, 786 F.3d 1126, 1131 (8th Cir. 2015) (citation omitted).  A decision does not fall outside that zone simply because the reviewing court might have reached a different conclusion had it been the finder of fact in the first instance. *Id.*

To be entitled to benefits, a claimant must demonstrate an inability to engage in substantial gainful activity which exists in the national economy, by reason of a medically determinable impairment which has lasted or can be expected to last for not less than 12 months.  42 U.S.C. § 423(d)(1)(A).  The Commissioner has promulgated regulations, found at 20 C.F.R. §§ 404.1520 and 415.920, establishing a five-step sequential evaluation process to determine disability.  The Commissioner begins by deciding whether the claimant is engaged in substantial gainful activity.  If not, the Commissioner decides whether the claimant has a "severe" impairment or combination of impairments.  A severe impairment is one which significantly limits a person's physical or mental ability to do basic work activities.  20 C.F.R. §§ 404.1520(c), 416.920(c).

8

If the impairment or combination of impairments is severe and meets the duration requirement, the Commissioner determines at step three whether the claimant's impairment meets or is medically equal to one of the deemed-disabling impairments listed in the Commissioner's regulations. If not, the Commissioner asks at step four whether the claimant has the RFC to perform his past relevant work. If the claimant cannot perform his past relevant work, the burden of production shifts at step five to the Commissioner to demonstrate that the claimant retains the RFC to perform other work that exists in significant numbers in the national economy and that is consistent with the claimant's vocational factors. *See, e.g.*, *Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010). "However, the burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) (citation omitted).

**Failure to Explain the Onset Date**

Plaintiff argues the ALJ failed to adequately explain the May 1, 2018 onset of disability date. The government responds that the ALJ's decision is adequately supported by the record and the ALJ was entitled to infer an onset date, as substantial evidence shows Plaintiff's vision degraded over time. Although the ALJ may "infer the date that the claimant first met the statutory definition of disability based on the medical evidence in the file," Social Security Ruling 18-01p, 83 Fed. Reg. 49,613 (Oct. 2, 2018), Plaintiff is correct that the RFC prior to May 1, 2018 is not supported by the record. There is substantial evidence that Plaintiff had acuity limitations prior to May 1, 2018, but the RFC omits these limits.

9

The ALJ bears the primary responsibility for assessing a claimant's RFC based on all relevant, credible evidence in the record, including medical records, the observations of treating physicians and others, and the claimant's own description of his symptoms and limitations. *Goff v. Barnhart,* 421 F.3d 785, 793 (8th Cir. 2005); *Eichelberger v. Barnhart,* 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. §§ 404.1545(a), 416.945(a). "A remand is appropriate where the ALJ's factual findings, considered in light of the record as a whole, are insufficient to permit this Court to conclude that substantial evidence supports the Commissioner's decision." *Scott ex rel. Scott v. Astrue*, 529 F.3d 818, 822 (8th Cir. 2008) (citation omitted). An ALJ's opinion must allow for meaningful judicial review. *Id*.

The record supports the conclusion that Plaintiff's vision worsened over time. She repeatedly complained of blurry vision during this period and had a series of physical examinations from 2015 to 2017 that revealed normal pupils, although none of these examinations were performed by ophthalmologists. Plaintiff's July 28, 2016 Function Report states that her daily living activities at that time included washing dishes, driving, or going shopping. Plaintiff had a consultative examination with Dr. Samudrala in January 2017 and showed visual acuity of 20/70 and near visual acuity of 20/50.

After May 1, 2018, there is evidence that Plaintiff's vision degraded. At her hearing on July 19, 2018, Plaintiff testified that she was unable to read or fill out a form without assistance or engage in other activities she could engage in as of her 2016 Function Report. Moreover, a consultative examination with Dr. Samudrala in August of

10

2018 revealed Plaintiff had visual acuity of 20/50 and near visual acuity of 20/100. This evidence supports the conclusion that Plaintiff's vision became worse.

However, there is not substantial evidence that Plaintiff did not have any visual acuity limitations prior to May 1, 2018. The RFC prior to May 1, 2018 states that Plaintiff "can also perform no work for which peripheral vision is an essential function," while the RFC for May 1, 2018 and later states that Plaintiff "is unable to engage in work for which near acuity or far acuity is an essential function." Tr. 22, 26. Plaintiff's RFC prior to May 1, 2018 does not have any restriction related to visual acuity. The ALJ does not explain why Plaintiff's RFC shifted from a restriction related to peripheral vision to a restriction related to acuity and such a shift is unsupported by the record.

Dr. Samudrala examined Plaintiff in January 2017 and found she had visual acuity of 20/70 and near visual acuity of 20/50. There are no vision examinations on the record prior to May 1, 2018 other than Dr. Samudrala's examination, which indicates Plaintiff had limitations related to her visual acuity. The ALJ gave great weight to Dr. Samudrala's opinion. The lack of visual acuity limitations in the RFC prior to May 1, 2018 is not supported by the record. Upon remand, the ALJ should further develop the record with respect to Plaintiff's visual acuity prior to May 1, 2018, and the impact of her past visual acuity on her ability to perform work related tasks.

**Failure to Fully Develop the Record**

Plaintiff next argues the ALJ failed to fully and fairly develop the record because he did not follow up with consultative examiner Dr. Samudrala when Dr. Samudrala answered some, but not all, of the questions posed by the ALJ. The Commissioner

11

responds that the examinations done by Dr. Samudrala support the ALJ's conclusion, Dr. Samudrala adequately reviewed Plaintiff's medical history, noted her visual difficulties, performed an examination, and recorded her visual acuity. Moreover, the government argues that the failure to follow up with Dr. Samudrala does not warrant reversal because it did not prejudice Plaintiff. The ALJ's failure to follow-up with Dr. Samudrala despite Plaintiff's repeated requests that he do so is concerning. *See Boyd v. Sullivan,* 960 F.2d 733, 736 (8th Cir.1992) (Commissioner has a duty to supplement the record if it does not contain enough information to make an informed decision).

In light of the remand and reevaluation of Plaintiff's onset date, the ALJ should appropriately review and re-evaluate the current evidentiary record and, if necessary, obtain supplemental evidence from a consultative examiner or develop the record in other ways.

## **CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **REVERSED and the case is REMANDED** for further proceedings consistent with this Memorandum and Order.

A separate Judgment shall accompany this Memorandum and Order.

_____  
AUDREY G. FLEISSIG  
UNITED STATES DISTRICT JUDGE

Dated on this 2nd day of February, 2021.